WILLIAM F. TARANTINO (CA SBN 215343)
WTarantino@mofo.com
KWAN PARK (SBN 306719)
BPark@mofo.com
ROBERT SANDOVAL (SBN 311032)
RSandoval@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

TRITIA M. MURATA (CA SBN 234344)
TMurata@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Plaintiff
CALIFORNIA GROCERS ASSOCIATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA GROCERS ASSOCIATION, a California non-profit organization, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF WEST HOLLYWOOD, a general law city, <br><br> Defendant. | Case No. 2:21-cv-1448 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff California Grocers Association ("Plaintiff" or "CGA") brings this action against Defendant City of West Hollywood ("Defendant" or "City") and alleges as follows in this Complaint for declaratory and injunctive relief:

1

sf-4430251

## INTRODUCTION

1.     At the onset of the COVID-19 pandemic, the State of California and various counties, cities, and other regulatory bodies throughout the state issued a series of emergency orders and regulations in an effort to stem the spread of the virus and protect the public health and welfare. These early efforts—aimed at balancing the public's basic economic and social needs with a desire to minimize COVID morbidity and mortality—came at a steep price, especially for essential businesses, and the millions of employees and members of the public who rely on them.

2.     California grocers have stayed open to serve their communities since day one. They understand that defeating this pandemic requires extraordinary measures and have eagerly committed themselves to the task. Since March of 2020, California grocers of all sizes have established rigorous and science-driven safety measures, often at great expense, to adapt to this new environment and ensure that they operate in a safe and hygienic manner in order to help slow the spread of the virus, and protect their workers and the public.

3.     Grocers have implemented comprehensive safety measures for customers and employees and compensated frontline grocery employees for their extra efforts in a difficult environment.  Grocers have provided "appreciation pay," "hero bonuses," and "thank you pay" to reward their associates.  Additionally, in terms of employee support, grocers have offered COVID-19 testing to employees and provided emergency leave and paid time off to those affected by the virus or experiencing symptoms.

4.     For worker safety, grocers have provided supplies to employees including face masks and protective gear in addition to encouraging employees to stay home if feeling ill and implementing paid leave policies. Plexiglas shields, physical distancing measures, and contactless payment and delivery services have been implemented to protect employees.  Some of California's largest grocers such

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
sf-4430251

as Kroger and Albertsons joined the United Food and Commercial Workers International union just last year to urge federal and state governments to designate grocery store employees as emergency first responders.

5.    Yet on February 16, 2021, the City passed the "Premium Pay for Grocery Workers Ordinance" ("Ordinance") which requires employers to pay a $5 per hour premium on whatever the employee's existing wage is at the time of enactment, regardless of any existing bonus, incentive, or hero pay program that the employer may have in place.

6.    The Ordinance unreasonably singles out specific grocers, while ignoring employers or essential frontline workers outside the grocery industry. Plaintiff seeks a declaration that the law is invalid and unconstitutional, and an injunction halting any action to enforce the Ordinance on the grounds that it (1) is preempted by federal law regulating collective bargaining and unfair labor practices; (2) violates the equal protection and contracts clauses of the U.S. and California constitutions.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. §1331, as the Plaintiffs' claims arise under federal laws; namely, the National Labor Relations Act, 29 U.S.C. §141 *et seq.*; Article VI of the U.S. Constitution which designates the Constitution and Laws of the United States as the supreme law of the land; and the equal protection clause and contracts clause of the U.S. Constitution.

8.    This Court has supplemental jurisdiction over this subject matter pursuant to 28 U.S.C. §1367(a), as the Plaintiffs' claims arising under the California Constitution are so closely related to the federal question claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

9.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as this Court is sited in the federal judicial district where the events giving rise to

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

CGA's claims have occurred, are now occurring, and will occur in the future if not prevented through actions of this Court. CGA's members are situated in this district and are and will continue to be adversely affected by the irreparable harms sought to be remedied and prevented by this Court's action upon this Complaint.

## PARTIES

10.  Plaintiff California Grocers Association has served as the voice of the state's grocery community for over 120 years. As a nonprofit, statewide trade association, CGA's membership is comprised of over 300 retailers and approximately 150 grocery supply companies. As part of its mission, CGA has advocated on behalf of its member retailers on important policy issues. Headquartered in Sacramento, California, CGA brings this action on behalf of its members operating stores in the City of West Hollywood.

11.  Defendant, City of West Hollywood, is and at all relevant times has been a public entity duly organized and existing under and by virtue of the laws of the State of California as a general law city.

## FACTUAL BACKGROUND

12.  California Grocers Association pursues this action on behalf of its members who are grocery store employers ("Members") because the employers who operate grocery stores in West Hollywood will suffer a direct and adverse impact from the application of the Ordinance, and thus would have standing to pursue these claims in their own right.  The policy and legal interest CGA seeks to protect is at the core of Plaintiff's mission, and the injunctive and declaratory relief sought does not require the participation of individual members.

13.  Several Members operate grocery stores in the City that employ members of a specific labor union, United Food and Commercial Workers International, Local 770 ("UFCW 770"), and those employees are parties to collective bargaining agreements that govern the terms of their employment, including wage scales. Other Members operate grocery stores that do not employ

unionized workers, but those employees are free to organize and select a collective bargaining unit, should they choose to do so.

14.    Members have suffered or will continue to suffer economic and non-economic harm as a result of the enactment of the Ordinance, and its foreseeable consequences on union organizing, ongoing collective bargaining, and labor relations for both unionized and non-union grocery stores in the City of West Hollywood. Members are required to alter the wage scales and other terms of their existing collective bargaining agreements, regardless of any additional hero pay, bonuses, or other non-monetary compensation provided to their employees to ease the burden of the COVID-19 pandemic.

15.    By design, the Ordinance picks winners and losers. It singles out large grocery companies with unionized workforces (i.e., UFCW 770's members) without providing any reasonable justification for the exclusion of other employers or frontline retail workers. The Ordinance arbitrarily and improperly targets certain grocery store businesses in West Hollywood for disparate treatment while not requiring the same commitments from similarly situated businesses, or conferring *any* benefits on similarly situated employees. There is no support for any of the City's statements that the Premium Pay will protect public health, address economic insecurity, and promote job retention.

## THE ORDINANCE

16.    The Premium Pay for Grocery Workers Ordinance is attached hereto as **Exhibit A**. It applies only to grocery stores that devote seventy (70%) or more of their business to retailing a general range of food products, which may be fresh or packaged, and which are operated by companies with more than 300 employees nationally and more than fifteen (15) employees per grocery store in the City. Section 2.A.

17.    Grocery stores meeting this minimum threshold of employees are required to provide each employee with premium pay consisting of an additional

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4430251

1    five dollars ($5.00) per hour for each hour worked.  Section 2.D.  The Ordinance is

2    set to expire in 120 days.  *Id.*

3         18.    The Ordinance takes effect immediately and prohibits reducing a

4    grocery employee's compensation or limiting a grocery employee's earning

5    capacity for exercising any rights protected under the Ordinance.  Section 2.E.

6         19.    Grocery stores are required to provide a notice of rights established

7    by the Ordinance.  Section 2.F.

8                          **FIRST CAUSE OF ACTION**

9                        **Declaratory and Injunctive Relief**

10                            **(NLRA Preemption)**

11        20.    CGA incorporates herein by this reference the allegations contained

12   in Paragraphs 1 through 19, inclusive.

13        21.    Enacted in 1935, the National Labor Relations Act ("NLRA"), as

14   amended, 29 U.S.C. § 151, *et seq*., creates a uniform federal body of law governing

15   union organizing, collective bargaining, and labor-management relations applicable

16   to employers engaged in interstate commerce.  It established various rules

17   concerning collective bargaining and defined a series of banned unfair labor

18   practices, including bans on interference with the formation or organization of labor

19   unions by employers. The NLRA does not apply to certain workers, including

20   supervisors, managerial employees and confidential employees – all categories

21   specifically excluded from the Ordinance.

22        22.    The NLRA prohibits state and local regulation of conduct that

23   Congress intended to be left to be controlled by the free-play of economic forces.

24   Legislation that interferes with the "balanced state of collective bargaining" is

25   preempted by the NLRA.  *See Machinists v. Wisconsin Employment Relations*

26   *Comm'n*, 427 U.S. 132 (1976).

27        23.    In particular, the NLRA preempts any and all state and local

28   enactments that, by design or consequence, regulate or interfere with the then-

existing balance of economic power between labor and management with respect to zones of activity that, under federal labor law, are intended to be left to the free play of economic forces. Laws subject to NLRA preemption include laws that interfere with or attempt to regulate the economic tools available to labor or management during the course of collective bargaining or that otherwise interfere with the collective bargaining process, such as those that alter the parties' rights and economic alternatives during collective bargaining, or the processes and procedures utilized for union organizing.

24.    Application of the Ordinance to the activities of the West Hollywood Members unequivocally intrudes upon zones of activity in the areas of labor relations, union organizing, and collective bargaining that is reserved under federal labor law and policy to the free play of economic forces.  The Ordinance establishes premium pay standards that, by design or consequence, empower the UFCW or other collective bargaining units to secure a wage rate they could not otherwise have obtained from the employer at a unionized or non-union grocery store. This undermines the collective bargaining process and disrupts the process of union organizing.

25.    While the City has the ability to enact ordinances to further the health and safety of its citizens, the Ordinance here bears no relation to those goals. Local minimum wage laws, for example, seek to lessen the burden on public welfare services. This ordinance is not a minimum labor standard.  It is a mandatory hourly bonus for a specific group of workers, regardless of the wage negotiated in the current collective bargaining agreements or other employment agreements.

26.    The Ordinance is preempted by the NLRA as it regulates zones of activity that Congress intentionally left to be controlled by the free play of economic forces.

27.    The City's application and enforcement of the Ordinance will cause CGA's Members to suffer irreparable harm for which they have no adequate

remedy at law, even if the Ordinance is later declared by this Court to be void and unenforceable. This claim is also brought pursuant to 42 U.S.C. §1983 and §1988(b).

28.    CGA is entitled to judgment declaring the Ordinance to be void and unenforceable under the Supremacy Clause of the U.S. Constitution and equitable and injunctive relief to prevent the City of West Hollywood or any other private enforcer from attempting to enforce or give effect to the Ordinance.

## SECOND CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (Equal Protection Clause of the United States Constitution)

29.    CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 28, inclusive.

30.    CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving Plaintiff's members of the protections afforded to them under the Equal Protection Clause of the U.S. Constitution, which guarantee each and all of them equal protection of the laws.  (U.S. Const., Amend. XIV, § 1). This claim is also brought pursuant to 42 U.S.C. §1983 and §1988(b).

31.    The Equal Protection Clause requires that persons who are similarly situated receive like treatment under the law, and that statutes may single out a class for distinction only if that classification bears a rational relationship to the purpose of the statute.  As such, the City may not irrationally single out one class of individuals for discriminatory treatment.

32.    The Ordinance improperly singles out certain grocery store businesses in West Hollywood for disparate treatment while not requiring the same treatment of similarly situated businesses.  More importantly, the ordinance implicates the Members' fundamental right to be free from unreasonable governmental interference with their contracts, specifically their collective bargaining agreements and other employment agreements.

33.     The stated purpose of the Ordinance, namely, to protect public health, address economic insecurity, and promote job retention during the COVID-19 emergency by requiring grocery stores to provide premium pay is not rationally related to the discriminatory treatment of CGA's Members.  No significant and legitimate public purpose exists for the Ordinance.  The City's stated objectives are merely an attempt to impose a public policy rationale on interest-group driven legislation for labor unions and, in particular, for UFCW 770.

34.     By virtue of the foregoing, application of the Ordinance to the CGA's Members within the City violates the equal protection guarantees of the U.S. Constitution.

35.     The City's application and enforcement of the Ordinance will cause Plaintiff's members to suffer irreparable harm for which they have no adequate remedy at law, even if the Ordinance is later declared by this Court to be void and unenforceable.

## THIRD CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (Equal Protection Clause of the California Constitution)

36.     CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 35, inclusive.

37.     CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving CGA's members of the protections afforded to them under the Equal Protection Clause of the California Constitution, which like the U.S. Constitution, guarantees each and all of them equal protection of the laws. (Cal. Const., Art. I § 7.)

38.     For the same reasons set forth in Paragraphs 29 through 35 above, the Ordinance violates the Equal Protection Clause of the California.  Such application will cause CGA's Members to suffer irreparable harm for which they have no adequate remedy at law.

## **FOURTH CAUSE OF ACTION**

### **For Declaratory and Injunctive Relief**

### **(Contracts Clause of the U.S. Constitution)**

39.     CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 38, inclusive.

40.     CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving CGA's Members of the protections afforded to them under the Contracts Clause of the U.S. Constitution, which provides in pertinent part that: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." (U.S. Const., Art. I, § 10, cl. 1).  The Contract Clause imposes limits upon the power of a State, and Municipalities operating under the color of State law, to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power.

41.     The Ordinance substantially interferes with Members' contracts, including its collective bargaining agreements with its employees, without any significant or legitimate public purpose. The City's stated objectives are to protect public health, address economic insecurity, and promote job retention.  None of these justifications support this measure, because the City's stated objectives are merely an attempt to impose a public policy rationale on interest-group driven legislation for labor unions and, in particular, for UFCW.

42.     Even if the City could show a significant and legitimate public purpose behind the regulation, the substantial impairment to the Members' contractual rights and obligations (i.e., the terms of the Members' existing collective bargaining agreements) are neither reasonable nor necessary to fulfill any such public purpose.

43.     By virtue of the foregoing, application of the Ordinance to CGA's members constitutes a substantial and unconstitutional impairment of those members existing contractual relationships that will cause them to suffer irreparable

10

harm for which they have no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (Contracts Clause of the California Constitution)

44.     CGA incorporate herein by this reference the allegations contained in Paragraphs 1 through 43, inclusive.  Plaintiffs hereby seek declaratory and injunctive relief to prevent the City from violating, and continuing to violate, the Contract Clause of the California Constitution, which provides in pertinent part that: "A ... law impairing the obligation of contracts may not be passed." (Cal. Const., Art. I, § 9.)

45.     Like the Federal Contracts Clause, the California Contracts Clause also imposes limits upon the State of California, and its municipalities, to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power.  For the same reasons set forth in Paragraphs 41 through 43 above, application of the Ordinance to CGA's members within the City constitutes a substantial and unconstitutional impairment of those members existing contractual relationship in violation of the California Contract Clause. Such application will cause those members to suffer irreparable harm for which they have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.     On the first cause of action, a judgment declaring that the Ordinance, as well as any act taken in furtherance of the Ordinance by any person, is preempted by the National Labor Relations Act, and its implementing regulations and guidance, and are therefore void and unenforceable, and entering a preliminary and permanent injunction enjoining the City from enforcing or taking any action under the Ordinance;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4430251

1    2.    On the second and third causes of action, enter a judgment declaring
2  that the Ordinance, as well as any act taken in furtherance of the Ordinance by any
3  person, violate state and federal equal protection guarantees, and are therefore void
4  and invalid, and entering a preliminary and permanent injunction enjoining the City
5  from enforcing or taking any action under the Ordinance;

6    3.    On the fourth and fifth causes of action, enter a judgment declaring
7  that the Ordinance, as well as any act taken in furtherance of the Ordinance by any
8  person, violate the contracts clauses of the state and federal constitution, and are
9  therefore void and invalid, and entering a preliminary and permanent injunction
10 enjoining the City from enforcing or taking any action under the Ordinance;

11   4.    For an award of attorneys' fees and costs of suit herein pursuant to
12 California Code of Civil Procedure § 1021.5, 42 U.S.C. §1988, or any other
13 applicable law; and

14   5.    For such other and further relief as the Court may deem just and
15 proper.

16 Dated:    February 17, 2021          MORRISON & FOERSTER LLP
17
18
19
20                                       By:   /s/ William F. Tarantino
                                               William F. Tarantino
21
22                                        Attorneys for Plaintiff
                                          CALIFORNIA GROCERS
                                          ASSOCIATION
23
24
25
26
27
28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
sf-4430251

# Exhibit A

ORDINANCE NO. _____

AN URGENCY ORDINANCE OF THE CITY COUNCIL OF
THE CITY OF WEST HOLLYWOOD ESTABLISHING
PREMIUM PAY AND ASSOCIATED LABOR PROTECTIONS
FOR GROCERY WORKERS WORKING IN WEST
HOLLYWOOD AND SETTING FORTH THE FACTS
CONSTITUTING SUCH URGENCY.

The City Council of the City of West Hollywood does ordain as follows:

SECTION 1. Findings.

1.   The new coronavirus 19 ("COVID-19") disease is caused by a virus
that spreads easily from person to person and may result in serious illness or
death, and is classified by the World Health Organization ("WHO") as a worldwide
pandemic.

2.   COVID-19 has broadly spread throughout California and remains a
significant health risk to the community, especially members of our most vulnerable
populations.

3.   The WHO has declared that COVID-19 is a global pandemic, which
is particularly severe in high risk populations such as people with underlying
medical conditions and the elderly, and the WHO has raised the health emergency
to the highest level, requiring dramatic interventions to disrupt the spread of this
disease.

4.   On March 4, 2020, California Governor Gavin Newsom proclaimed a
state of emergency in response to new cases of COVID-19, directing state
agencies to use all resources necessary to prepare for and respond to the
outbreak.

5.   On March 16, 2020, the City Council of the City of West Hollywood
proclaimed the existence of a local emergency in response to new cases of
COVID-19, authorizing the City Manager to exercise the emergency powers
necessary to take extraordinary measures to prevent death or injury of persons
and to protect the public peace, safety and welfare, and alleviate damage, loss,
hardship or suffering.

6.   On March 19, 2020, Governor Newsom issued a "Stay Home – Stay
Healthy" proclamation closing all non-essential workplaces, requiring people to
stay home except to participate in essential activities or to provide essential
business services, and banning all gatherings for social, spiritual, and recreational
purposes. In addition to healthcare, public health and emergency services, the
"Stay Home – Stay Healthy" proclamation identified grocery stores as essential

business sectors critical to protecting the health and well-being of all Californians and designated their workers as essential critical infrastructure workers.

7.   On March 19, 2020, in order to mitigate the effects of COVID-19 within the County of Los Angeles, the County Public Health Officer issued the "Safer at Home" Order to control the affects and spread of COVID-19 by closing all non-essential workplaces, requiring people to stay home except to participate in essential activities or to provide essential business services, and banning all gatherings of more than 10 people. In addition to healthcare, public health and emergency services, the "Safer at Home" Order identified grocery stores as essential business sectors critical to protecting the health and well-being of all Californians and designated their workers as essential critical infrastructure workers; and

8.   Effective November 30, 2020, the County Department of Public Health enacted a new Health Officer Order requesting individuals to remain in their homes as much as possible and to avoid crowding and mingling with non-household members. The Order came after many Americans gathered and traveled over the Thanksgiving holiday in the midst of a winter surge of COVID-19 cases and deaths.  According to the County Department of Public Health, daily peaks are now more than double the County's peak of daily cases during the summer surge. The region is currently experiencing a surge following the winter holiday season. The Southern California Region, which the City of West Hollywood is a part of, was at zero percent ICU capacity on January 15, 2021. Nevertheless, Grocery workers report to work while others are directed to remain home to slow the spread of the virus.

9.   On December 3, 2020, Governor Newsom extended the "Stay Home – Stay Healthy" proclamation.

10. On January 25, 2021 Governor Newsom lifted the statewide stay-at-home order, returning counties back to a tiered system.

11. On January 25, 2021, the California Department of Public Health (CDPH) ended the Regional Stay at Home Order, lifting the order for all regions statewide, including Southern California.  This action allowed all counties to return to the Blueprint for a Safer Economy framework which uses color-coded tiers to indicate which activities and businesses can open based on local case rates and test positivity.  Los Angeles County is in the strictest tier, the Purple Tier.

12.   Los Angeles County remains in the most restrictive purple tier where many non-essential business operations remain closed and the virus remains widespread.

13. As of January 28, 2021, the WHO Situation Report reported a global total of 100,455,529 cases of COVID-19, including 2,166,440 deaths; California

reported 3,200,000 cases of COVID-19, including 38,927 deaths; and West Hollywood has reported 1,874 cases of COVID-19, including 24 deaths.

14. Grocery stores are essential businesses operating in West Hollywood during the COVID-19 emergency making grocery workers highly vulnerable to economic insecurity and health or safety risks.

15. Grocery workers working for grocery stores are essential workers who perform services that are fundamental to the economy and health of the community during the COVID-19 crisis. They work in high risk conditions with inconsistent access to protective equipment and other safety measures; work in public situations with limited ability to engage in physical distancing; and continually expose themselves and the public to the spread of disease.

16. Premium pay, paid in addition to regular wages, is an established type of compensation for employees performing hazardous duty or work involving physical hardship that can cause extreme physical discomfort and distress.

17. Grocery workers working during the COVID-19 emergency merit additional compensation because they are performing hazardous duty due to the significant risk of exposure to the COVID-19 virus. Grocery workers have been working under these hazardous conditions for months. They are working in these hazardous conditions now and will continue to face safety risks as the virus presents an ongoing threat for an uncertain period, potentially resulting in subsequent waves of infection.

18. The availability of grocery stores is fundamental to the health of the community and is made possible during the COVID-19 emergency because grocery workers are on the frontlines of this devastating pandemic supporting public health, safety, and welfare by working in hazardous situations. A study of grocery store workers has also shown an accelerated risk of coronavirus infection faced by workers in customer-centric roles. Another report from CNBC reports how the toll of COVID has been particular hard on grocery store workers who can't work from home and often have low pay and limited benefits. Additionally, new and potentially more contagious variants of the coronavirus that have been detected in California.

19. Establishing an immediate requirement for grocery stores to provide premium pay to grocery workers protects public health, supports stable incomes, and promotes job retention by ensuring that grocery workers are compensated for the substantial risks, efforts, and expenses they are undertaking to provide essential services in a safe and reliable manner during the COVID-19 emergency.

20. As a result of the COVID-19 pandemic, this Ordinance aims to protect and promote the public health, safety, and welfare during the new coronavirus 19 (COVID-19) emergency by requiring grocery stores to provide premium pay for grocery workers performing work in West Hollywood. Requiring

grocery stores to provide premium pay to grocery workers compensates grocery workers for the risks of working during a pandemic. Grocery workers face magnified risks of catching or spreading the COVID-19 disease because the nature of their work involves close contact with the public, including members of the public who are not showing symptoms of COVID-19 but who can spread the disease. The provision of premium pay better ensures the retention of these essential workers who are on the frontlines of this pandemic providing essential services and who are needed throughout the duration of the COVID-19 emergency. As such, they are deserving of fair and equitable compensation for their work.

21. This Ordinance is adopted pursuant to the City's police powers and powers afforded to the city in time of national, state, county and local emergency during an unprecedented health pandemic, such powers being afforded by the State Constitution, State law and the Chapter 2.80 of the West Hollywood Municipal Code to protect the peace, health, and safety of the public. The West Hollywood City Council finds that this ordinance is necessary for the preservation of the public peace, health, and safety of grocery workers working in West Hollywood and finds urgency to approve this ordinance immediately based on the facts described herein and detailed in the staff report. Under Government Code Section 8634, this ordinance is necessary to provide for the protection of health, life and property.

SECTION 2.  PREMIUM PAY FOR GROCERY WORKERS.

A. Definitions.

For purposes of this Ordinance:

"Adverse action" means reducing the compensation to a grocery worker, garnishing gratuities, temporarily or permanently denying or limiting access to work, incentives, or bonuses, offering less desirable work, demoting, terminating, deactivating, putting a grocery worker on hold status, failing to rehire after a seasonal interruption of work, threatening, penalizing, retaliating, or otherwise discriminating against a covered grocery worker for any reason prohibited by this ordinance. "Adverse action" also encompasses any action by the hiring entity or a person acting on the hiring entity's behalf that would dissuade a grocery worker from exercising any right afforded by this ordinance.

"Aggrieved party" means a grocery worker or other person who suffers tangible or intangible harm due to a hiring entity or other person's violation of this ordinance.

"City" means the City of West Hollywood.

"Covered grocery worker" means a grocery worker employed directly by a hiring entity who is entitled to premium pay pursuant to this Ordinance.

"Grocery worker" means a worker employed directly by a hiring entity at a grocery store. Grocery worker does not include managers, supervisors or confidential employees.

"Grocery store" means a store that devotes seventy percent (70%) or more of its business to retailing a general range of food products, which may be fresh or packaged. There is a rebuttable presumption that if a store receives seventy percent (70%) or more revenue from retailing a general range of food products, then it qualifies as a grocery store.

"Hiring entity" means a grocery store that employs over three hundred (300) grocery workers nationally and employs more than fifteen (15) employees per grocery store in the City of West Hollywood.

"Premium pay" means additional compensation owed to a grocery worker that is separate from hiring entity payments for providing services, bonuses, and commissions, as well as tips earned from customers.

"Respondent" means a grocery store, parent company or any person who is alleged or found to have committed a violation of this Ordinance.

B. Grocery worker coverage.

For the purposes of this Ordinance, covered grocery workers are limited to those who perform work for a hiring entity where the work is performed in the City of West Hollywood.

C. Hiring entity coverage.

1. For purposes of this Ordinance, hiring entities are limited to those who employ three hundred (300) or more grocery workers nationally and employ more than fifteen (15) employees per grocery store in the City of West Hollywood.

2. To determine the number of grocery workers employed for the current calendar year:

a. The calculation is based upon the average number per calendar week of grocery workers who worked for compensation during the preceding calendar year for any and all weeks during which at least one (1) grocery worker worked for compensation. For hiring entities that did not have any grocery workers during the preceding calendar year, the number of grocery workers employed for the current calendar year is calculated based upon the average number per calendar week of grocery workers who worked for compensation

**Exhibit A**
**Page 17**

during the first ninety (90) calendar days of the current year in which the hiring entity engaged in business.

b. All grocery workers who worked for compensation shall be counted, including but not limited to:

i. Grocery workers who are not covered by this Ordinance; and

ii. Grocery workers who worked in West Hollywood.

D. Premium pay requirement.

1. Hiring entities shall provide each grocery worker with premium pay consisting of an additional Five Dollars ($5.00) per hour for each hour worked.

2. Hiring entities shall provide the pay required by Subsection D.1 for a minimum of one hundred twenty (120) days from the effective date of this Ordinance.

3. This terms of this Section 2 shall be in effect for  one hundred twenty (120) days from the effective date of this Ordinance.

E.      Grocery worker and consumer protections.

1. No hiring entity shall, as a result of this Ordinance going into effect, take any of the following actions:

a. Reduce a grocery worker's compensation;

b. Limit a grocery worker's earning capacity.

2. It shall be a violation if this Ordinance is a motivating factor in a hiring entity's decision to take any of the actions in Subsection E.1 unless the hiring entity can prove that its decision to take the action(s) would have happened in the absence of this Ordinance going into effect.

F.      Notice of rights.

1. Hiring entities shall provide covered grocery workers with a written notice of rights established by this Ordinance. The notice of rights shall be in a form and manner sufficient to inform grocery workers of their rights under this Ordinance. The notice of rights shall provide information on:

a. The right to premium pay guaranteed by this Ordinance;

b. The right to be protected from retaliation for exercising in good faith the rights protected by this Ordinance; and

c. The right to bring a civil action for a violation of the requirements of this Ordinance, including a hiring entity's denial of premium pay as required by this Ordinance and a hiring entity or other person's retaliation against a covered grocery worker or other person for asserting the right to premium pay or otherwise engaging in an activity protected by this Ordinance.

2. Hiring entities shall provide the notice of rights required by posting a written notice of rights in a location of the grocery store utilized by employees for breaks, and in an electronic format that is readily accessible to the grocery workers. The notice of rights shall be made available to the grocery workers via smartphone application or an online web portal, in English and any language that the hiring entity knows or has reason to know is the primary language of the grocery worker(s).

G. Hiring entity records.

1. Hiring entities shall retain records that document compliance with this Ordinance for covered grocery workers.

2. Hiring entities shall retain the records required above for a period of two (2) years.

2. If a hiring entity fails to retain adequate records required under this Ordinance, there shall be a presumption, rebuttable by clear and convincing evidence, that the hiring entity violated this Ordinance for each covered grocery worker for whom records were not retained.

H. Retaliation prohibited.

No hiring entity employing a grocery worker shall discharge, reduce in compensation, or otherwise discriminate against any grocery worker for opposing any practice proscribed by this Ordinance, for participating in proceedings related to this Ordinance, for seeking to exercise their rights under this Ordinance by any lawful means, or for otherwise asserting rights under this Ordinance.

I. Violation.

The failure of any respondent to comply with any requirement imposed on the respondent under this Ordinance is a violation.

J. Remedies.

1. The payment of unpaid compensation, liquidated damages, civil penalties, penalties payable to aggrieved parties, fines, and interest provided under this Ordinance is cumulative and is not intended to be exclusive of any other available remedies, penalties, fines, and procedures.

2. A respondent found to be in violation of this Ordinance for retaliation under Section H above shall be subject to any appropriate relief at law or equity including, but not limited to reinstatement of the aggrieved party, front pay in lieu of reinstatement with full payment of unpaid compensation plus interest in favor of the aggrieved party under the terms of this Ordinance, and liquidated damages in an additional amount of up to twice the unpaid compensation.

K. Private right of action.

1. Any covered grocery worker that suffers financial injury as a result of a violation of this Ordinance, or is the subject of prohibited retaliation under Section H, may bring a civil action in a court of competent jurisdiction against the hiring entity or other person violating this Ordinance and, upon prevailing, may be awarded reasonable attorney fees and costs and such legal or equitable relief as may be appropriate to remedy the violation including, without limitation: the payment of any unpaid compensation plus interest due to the person and liquidated damages in an additional amount of up to twice the unpaid compensation; and a reasonable penalty payable to any aggrieved party if the aggrieved party was subject to prohibited retaliation.

L. Encouragement of more generous policies.

1. Nothing in this Ordinance shall be construed to discourage or prohibit a hiring entity from the adoption or retention of premium pay policies more generous than the one required herein.

2. Nothing in this Ordinance shall be construed as diminishing the obligation of a hiring entity to comply with any contract or other agreement providing more generous protections to a grocery worker than required by this Ordinance.

M.  Other legal requirements.

This Ordinance provides minimum requirements for premium pay while working for a hiring entity during the COVID-19 emergency and shall not be construed to preempt, limit, or otherwise affect the applicability of any other law, regulation, requirement, policy, or standard that provides for higher premium pay, or that extends other protections to grocery workers; and nothing in this Ordinance shall be interpreted or applied so as to create any power or duty in conflict with federal or state law. Nothing in this Section shall be construed as restricting a grocery worker's right to pursue any other remedies at law or equity for violation of their rights.

N. Exemption for collective bargaining agreement.

All of the provisions of this Ordinance, or any part thereof, may be expressly waived in a collective bargaining agreement, but only if the waiver is explicitly set forth in the agreement in clear and unambiguous terms. Unilateral implementation of terms and conditions of employment by either party to a collective bargaining relationship shall not constitute a waiver of all or any of the provisions of this Ordinance.

O. No waiver of rights.

Except for a collective bargaining agreement provision made pursuant to Section N, any waiver by a grocery worker of any or all provisions of this Ordinance shall be deemed contrary to public policy and shall be void and unenforceable. Other than in connection with the bona fide negotiation of a collective bargaining agreement, any request by a hiring entity to a grocery worker to waive rights given by this Ordinance shall be a violation of this Ordinance.

SECTION 3.  Urgency Findings.  Pursuant to California Government Code Section 36937, this Ordinance is designed to protect the health, safety and welfare of the citizens of the City of West Hollywood and becomes effective immediately up adoption by a four-fifths (4/5) vote of the City Council. The City Council hereby finds that there is an urgent need to adopt these regulations in order to address the current and immediate threats set forth above. Given the uncertain and evolving nature of the pandemic, the premium pay and associated protections must be immediately implemented to ensure that grocery workers continue working and providing this essential service to the residents of West Hollywood and the region generally. The workers have already been working for many months throughout this pandemic.  Grocery workers face magnified risks of catching or spreading the COVID-19 disease because the nature of their work involves close contact with the public, including members of the public who are not showing symptoms of COVID-19 but who can spread the disease. The provision of premium pay better ensures the retention of these essential workers who are on the frontlines of this pandemic providing essential services and who are needed throughout the duration of the COVID-19 emergency. This urgency ordinance is needed during the emergency in the interest of maintaining access to and continuity in essential grocery services and access to food through grocery store operations. Under Government Code Section 8634 and WHMC Chapter 2.80, this ordinance is necessary to provide for the protection of life and property for the reasons set out herein. The Council therefore finds and determines that the immediate preservation of the public peace, health and safety, and protection of life and property, require that this Ordinance be enacted as an urgency ordinance pursuant to Government Code section 36937 and take effect immediately upon adoption by four-fifths of the City Council.

SECTION 4.  CEQA. The City Council determines that the adoption of this Urgency Ordinance is exempt from environmental review under the California Environmental Quality Act ("CEQA") pursuant to the following provisions of the CEQA Guidelines, 14 California Code of Regulations, Chapter 3: this Urgency Ordinance is

exempt under CEQA Guidelines Section 15378(b)(5) in that it is not a "project" under CEQA, and will not result in direct or indirect physical changes in the environment. This ordinance only regulates the pay and protections for grocery works those matters would not result in physical changes to the environment.

      <u>SECTION 5.</u>   Severability.   If any section or provision of this Urgency Ordinance is for any reason held to be invalid or unconstitutional by any court of competent jurisdiction, or contravened by reason of any preemptive legislation, the remaining sections and/or provisions of this Urgency Ordinance shall remain valid. The City Council hereby declares that it would have adopted this Urgency Ordinance, and each section or provision thereof, regardless of the fact that any one or more section(s) or provision(s) may be declared invalid or unconstitutional or contravened via legislation.

      SECTION 6. Certification. The City Clerk shall certify to the passage and adoption of this Ordinance and shall cause the same, or the summary thereof, to be published or posted in the manner required by law.